## Melville v. Philadelphia, Appellant.

*Contract—Municipal contract—Architect—Change of plans.*

Where a city agrees to pay a firm of architects a certain percentage on the cost of construction of a fire and ice boat, in consideration of their services in preparing the plans and specifications for the boat, the city cannot reduce the compensation agreed upon after the architects have done their work, by eliminating the fire features of the boat and thereby reducing its cost of construction.

Argued Oct. 21, 1908. Appeal, No. 171, Oct. T., 1908, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1906, No. 4,399, on verdict for plaintiff in case of George W. Melville and John H. MacAlpine, trading as Melville & Mac-Alpine, v. City of Philadelphia. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit on a written contract. Before WILLSON, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $1,112.87, on which judgment was entered for $681 all above that amount having been remitted. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*W. C. Wilson,* assistant city solicitor, with him *Chas. E. Bartlett* and *J. Howard Gendell,* city solicitor, for appellant, cited: Johnston v. Philadelphia, 113 Fed. Repr. 40.

*Paul C. Hamlin* and *William W. Porter,* with them *Herbert G. Stockwell,* for appellee, cited: McManus v. Philadelphia, 211 Pa. 394.

OPINION BY BEAVER, J., February 26, 1909:

The assignments of error raise but a single question: Was the defendant entitled to the affirmance of its point that, "Under all the evidence the verdict should be for the defendant," which was refused, and, upon motion for judgment n. o. v., should the court have granted it, the motion being refused and judgment entered upon the verdict?

The claim of the defendant is based upon a written agreement between the defendant and the plaintiffs, in and by which the plaintiffs were employed by the city defendant as "naval architects to draw all the plans and specifications for and supervise the construction" of an ice and fire boat, provision for which had been made by sundry ordinances of the defendant city, recited in the agreement aforesaid, "and to give general supervision and inspection of all the details of the construction, trials and tests, and also the materials and appliances used therein." In consideration whereof it was agreed on the part of the defendant to pay to the plaintiffs "the sum of five per cent. (5) of the total cost of the said boat when fully completed, ready for use and accepted by the said party of the first part; provided, however, the sum to be expended under this agreement shall in no event exceed the sum of nineteen thousand dollars ($19,000.)"

The payments were provided for as follows: "For the making the necessary general plans for the said boat one (1) per cent. For preparing and writing the necessary specifications governing the construction, material and workmanship for the said boat one (1) per cent. These two items of one (1) per cent. each are to be made to the said parties of the second part on the date of the letting or awarding of the contract for the

construction of the said boat, and the balance or remaining item of three (3) per cent. to be paid to the said parties of the second part on the completion of the said boat and its delivery to and acceptance by the said city of Philadelphia. All necessary surveys, measurements, necessary labor for the inspection and testing of material or appliances, and such other investigations as may be deemed advisable, to be provided at the expense of the said party of the first part."

Instead of two ice and fire boats, as provided in the ordinances of council, recited in the agreement between the plaintiffs and the defendant, the defendant determined to build but one.

It is admitted in the counterstatement of the defendant that the plaintiffs prepared plans and specifications for an ice and fire boat for the city of Philadelphia, the said boat to cost $380,000. Such plans and specifications were prepared accordingly, delivered to the city and accepted by it in April, 1905. The said plans and specifications were used by the city as a basis for bids made for construction of the boat and, on April 27, 1905, the city (acting in pursuance of a resolution of councils passed April 27, 1905) awarded to the William Cramp & Sons Ship & Engine Building Company the contract for construction of an ice and fire boat to be built in accordance with said plans and specifications, and to cost $380,000. The acceptance of the bid by William Cramp & Sons and the awarding of the contract to them it seems to us fixed the amount of the compensation to be paid to the plaintiffs, in accordance with their agreement with the city, namely, two per cent, which was to be paid them "on the date of the letting or awarding of the contract for the construction of the said boat," the contract price being the amount upon which the two per cent of compensation should be computed. As a matter of fact, the defendant did pay to the plaintiffs the full amount of two per cent upon the $380,000, the amount of the contract price to be paid to the William Cramp & Sons Ship & Engine Building Company. The plans and specifications embrace the machinery and its arrangement necessary for a fire as well as an ice boat. Afterwards, as the defendant alleges in its counter-

statement, on July 22, 1905, the city gave notice to the plaintiffs that the fire outfit would be eliminated in the construction, so that the boat would be constructed as an ice boat merely. The fire feature was to have cost $30,000, and hence its elimination reduced the cost of the boat to $350,000. The elimination of the fire outfit in the boat did not eliminate the work done by the plaintiffs in making the plans and specifications, of which the fire feature was an important, and to some extent controlling, element, but the change presumably increased their work by requiring the elimination of the fire apparatus from the plans and a readjustment of the machinery. But upon the final settlement with the plaintiffs the city deducted $600 from the sum which had been originally paid as an overpayment and credited it upon the remaining three per cent of the total final cost of the said boat, when fully completed, ready for use and accepted by the city. This payment was accepted by the plaintiffs expressly on account and without prejudice to their claim for a balance which they alleged to be due them, and it was for this balance that the present suit was brought.

We are of opinion that the trial judge in the court below was justified in saying in his charge to the jury: "The city voluntarily paid to these plaintiffs $7,600 for doing work which they were ordered to do. These men did the work of preparing the plans and specifications for an ice and fire boat, and the negotiations between the city and the concern that had been accepted as the builder fixes the price of such a boat at $380,000, and the contract was awarded to them at that price. In my judgment, simply because the city chose subsequently to alter the character of boat and reduce the amount of the contract price, it cannot be relieved of meeting its just, fair and honest obligation to the people it employed to do the work of preparing the plans and specifications. It seems to be very clear, on the evidence in this case, that the plaintiffs are entitled to a verdict for $600, with interest from the time when that money was withheld from them, the date of which I do not recall."

It was claimed by the plaintiffs, on the trial in the court below, that they had not only prepared the plans and specifications for an ice and fire boat, but had actually inspected the

materials for the fire apparatus to be contained therein. Their recovery in the court below was simply for the $600 paid them under the agreement, as it was construed by both parties at the time, after the plans and specifications of a vessel to cost $380,000, the bid of the William Cramp & Sons Ship & Engine Building Company had been accepted, and the contract for the building awarded to them. The verdict of the jury was for $1,112.77, which doubtless included the actual amount of work done by the plaintiffs in supervising the construction of the boat and the materials for the fire apparatus, before the change eliminating the fire apparatus from the boat and confining it to an ice boat.

The court, however, on motion for judgment n. o. v. and for a new trial ordered "that if the plaintiffs shall within thirty days file a remittitur of all the verdict above the sum of $681, a new trial will be refused, otherwise granted." The plaintiffs' remittitur was filed and judgment entered upon the reduced amount of the verdict, and inasmuch as there is no appeal on the part of the plaintiffs, we cannot enter judgment upon the verdict as rendered. As we understand the testimony and the argument of the defendant, it is not claimed that the plaintiffs agreed in any way to the elimination of the fire apparatus and the consequent reduction of the price of the vessel, for which they had prepared the plans and specifications.

We are of opinion, therefore, that the amount fixed by the court was the least for which judgment should have been entered. Judgment affirmed.